UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NOEMI ORTIZ,

                                 Plaintiff,

                                 v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                 Defendant.
_____

<u>DECISION AND ORDER</u>

16-CV-6090L

**PRELIMINARY STATEMENT**

Plaintiff Noemi Ortiz ("Ortiz") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). (Dkt. # 1).

On December 5, 2012, Ortiz filed an application for a period of disability and DIB under Title II of the Act, alleging disability beginning on August 11, 2011. (Tr. 65).[1] On March 11, 2013, the Social Security Administration denied Ortiz's application, finding that she was not disabled. (Tr. 134-145). Ortiz requested and was granted a hearing before Administrative Law Judge Brian Kane (the "ALJ"). (Tr. 146, 204-208). The ALJ conducted the hearing on February 5, 2015, at which Ortiz and a vocational expert appeared and testified. (Tr. 65-84). In a decision

---
[1] References to page numbers in the Administrative Transcript (Dkt. # 8) utilize the internal Bates-stamped pagination assigned by the parties.

dated March 3, 2015, the ALJ found that Ortiz was not disabled and was not entitled to benefits. (*Id.*). On December 20, 2015, the Appeals Council denied Ortiz's request for review of the ALJ's decision, making the Commissioner's decision final. (Tr. 1-4). Ortiz commenced this action on February 11, 2016, seeking review of the Commissioner's decision. (Dkt. # 1).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. ## 11; 17). For the reasons set forth below, Ortiz's motion (Dkt. # 11) is denied, and the Commissioner's cross motion (Dkt. # 17) is granted. Ortiz's Complaint (Dkt. # 1), therefore, is dismissed with prejudice.

## DISCUSSION

### A. Standard of Review

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ has applied the correct legal standard. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of substantiality of the evidence must also include that which detracts from its weight.'" *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997)). Still, "it is not the function of a reviewing court to decide de novo whether a claimant was disabled[.]" *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational

probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

The same level of deference is not owed to the Commissioner's conclusions of law. *See Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984). This Court must independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112. Therefore, this Court first examines the legal standards applied, and then, if the standards were correctly applied, considers the substantiality of the evidence. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

### B. <u>Disability Determination</u>

An ALJ proceeds through a five-step evaluation in determining whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, then the ALJ continues to step two, and determines whether the claimant has an impairment, or combination of impairments, that is "severe," that is, that imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If not, the analysis concludes with a finding of "not disabled." If so, the ALJ proceeds to step three.

At step three, the ALJ examines whether the claimant's impairment meets or equals the criteria of a listed impairment in Appendix 1 to Subpart P of Part 404 (the "Listing"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a listed impairment and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ's analysis proceeds to step four, and the ALJ determines the claimant's residual

functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. 20 C.F.R. § 404.1520(e).

The ALJ then turns to whether the claimant's RFC permits performance of the requirements of the claimant's past relevant work. 20 C.F.R. § 404.1520(f). If so, the claimant is not disabled. If not, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled, by presenting evidence demonstrating that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see* 20 C.F.R. § 404.1560(c).

## C. The ALJ's Decision

In this case, the ALJ applied the five-step analysis described above. At step one, the ALJ found that Ortiz had not engaged in substantial gainful activity since August 11, 2011, the alleged onset date. (Tr. 67). At step two, the ALJ found that Ortiz had the following severe impairments: left shoulder capsulitis[2]; wrist tenosynovitis[3]; diabetes mellitus; and asthma. (*Id.*). At step three, the ALJ found that such impairments, alone or in combination, did not meet or medically equal a listed impairment in the Listing. (Tr. 68).

---

[2] Adhesive capsulitis, also called frozen shoulder, is "a condition in which joint motion becomes restricted because of inflammatory thickening of the capsule; a common cause of shoulder stiffness." STEDMANS MEDICAL DICTIONARY 140970, Westlaw (database updated November 2014).

[3] de Quervain tenosynovitis is inflammation of certain tendons in the wrist, which is diagnosed by a specific provocative test, i.e., the Finkelstein test. STEDMANS MEDICAL DICTIONARY 902190, Westlaw (database updated November 2014).

4

Next, the ALJ determined that Ortiz retained the RFC to perform less than the full range of sedentary work.[4] Specifically, the ALJ found "[a]lthough the claimant is capable of lifting, carrying, pushing, and pulling ten pounds occasionally, sitting for six hours in an eight-hour workday and standing and walking two hours in an eight-hour workday, she can occasionally use the non-dominant upper extremity for fingering and handling." (Tr. 68). At step four, the ALJ found that based on Ortiz's RFC, she was unable to perform her past relevant work as a school social worker. (Tr. 76). At step five, the ALJ relied on the testimony of vocational expert Dr. Peter A. Manzi (the "VE") and found that Ortiz is capable of performing other work that exists in significant numbers in the national economy given her age, education, work experience, and RFC. (Tr. 77). Specifically, the VE testified that Ortiz could work as a calculating machine operator (DOT 216.482-022), and as an information clerk (DOT 237.367-022). (*Id.*). Accordingly, the ALJ found that Ortiz was not "disabled" under the Act. (*Id.*).

**D. Analysis**

Ortiz's principal argument for remand is that the Commissioner's decision is not supported by substantial evidence and is based on errors of law. (Dkt. # 11-1 at 2). Specifically, Ortiz argues that the ALJ improperly relied on his own lay interpretation of the medical evidence in arriving at his RFC finding regarding Ortiz's use of her left upper extremity for fingering and handling. (*Id.* at 22). According to Ortiz, this is so because "[n]one of the opinions" relied upon by the ALJ for this portion of his RFC finding assessed Ortiz's left hand and wrist conditions, and, in any event, those medical opinions are stale or moot evidence. (*Id.* at 25-26). Ortiz also argues that the ALJ improperly afforded great weight to Dr. Eduardo Arreaza's medical opinion,

---
[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

yet failed to explain why certain limitations in that opinion were not included in the ALJ's RFC finding. (*Id.* at 26-28). Finally, Ortiz argues that the ALJ failed to properly evaluate the opinion of Certified Nurse Practitioner Christie Bowen ("NPC Bowen").[5] (*Id.* at 28-30). The Commissioner maintains that the ALJ's RFC determination is supported by substantial evidence, (Dkt. # 17 at 5-8), and that the ALJ properly assessed NPC Bowen's opinion, but misattributed it to another doctor, (*id.* at 8).

### 1. Whether the ALJ Improperly Substituted His Own Lay Opinion to Determine Ortiz's RFC.

Ortiz's first argument is that the ALJ's RFC finding regarding use of her upper left extremity for fingering and handling is not supported by any of the medical opinions in the record, and that the opinions on which the ALJ relied are stale or moot in light of Ortiz's December 2014 surgery, and, thus, unreliable. Therefore, the ALJ improperly relied upon his lay opinion when determining that portion of his RFC finding. The Court finds this argument to be without merit.

To be sure, generally, "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dailey v. Astrue*, No. 09-cv-0099, 2010 WL 4703599, *11 (W.D.N.Y. Oct. 26, 2010), *adopted by*, 2010 WL 4703591 (W.D.N.Y. Nov. 19, 2010). Moreover, "medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015) (quotations omitted), *aff'd*, 652 Fed. Appx. 25 (2d Cir. 2016) (summary order). Still, though, the ALJ's opinion need

---

[5] The ALJ and the parties in their briefs refer to this person as NPC Christie "Bowen," whereas the administrative transcript sometimes refers to that same person as having the last name "Bowen" or "Bowmer." For clarity, this Court will refer to this individual as NPC Bowen, consistent with the parties' briefs.

"not perfectly correspond with any of the opinions of medical sources cited in his decision," and the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (summary order); *see also O'Neil v. Colvin*, No. 13-cv-575, 2014 WL 5500662, *6 (W.D.N.Y. Oct. 30, 2014) ("the ALJ's RFC finding need not track any one medical opinion"). Furthermore, it is for the ALJ to resolve conflicting medical evidence in the record. *See Carney v. Berryhill*, No. 16-cv-269, 2017 WL 2021529, *4 (W.D.N.Y. May 12, 2017).

Here, the ALJ gave "great" or "significant" weight to three opinions in the record: Dr. Elizama Montalvo, M.D; Dr. Steven Hausmann, M.D.; and Dr. Eduardo Arreaza, M.D.[6] Consultative examiner Dr. Montalvo examined Ortiz on February 6, 2013. (Tr. 429). The ALJ rightly acknowledged that Dr. Montalvo "did not account for the claimant's limitations in fingering and handling with her non-dominant extremity," in her medical source statement. (Tr. 75). Yet it is evident that Dr. Montalvo evaluated Ortiz's wrists and hands and did not diagnose Ortiz with any related issues. Upon presenting to Dr. Montalvo, Ortiz's "chief complaint," among other things, was her history of left shoulder pain, and a history of capsulitis, since her August 2011 work-related injury. (Tr. 429). Her pain worsened when "lifting heavy thing," "comes and goes," and ranged from a six out of ten to a nine out of ten. (*Id.*). Ortiz explained that her pain radiated to her left wrist and that she used a brace when this happened. (*Id.*). Ortiz was able to do light cooking daily, light cleaning once a week, light laundry once a week, shop every two weeks, shower once or twice a day, bathe as needed, get dressed every

---

[6] The ALJ accorded "great weight" to the opinion of Dr. Arreaza, Ortiz's pulmonologist. (Tr. 75-76). Dr. Arreaza assessed Ortiz's functional limitations related to her asthma. (Tr. 701-703). Given that this assessment is unrelated to functional limitations associated with Ortiz's use of her left upper extremity for fingering and handling, the Court will not analyze whether Dr. Arreaza's opinion is supportive of that portion of the ALJ's RFC finding.

7

day, watch TV, listen to music, read, grocery shop, and do hobbies such as scrapbooking and journaling. (Tr. 430).

Notably, Ortiz's hand and finger dexterity was intact, her grip strength on the left was four out of five, and five out of five on the right, and she was able to zip, button, and tie. (Tr. 432). Regarding Ortiz's wrists, her dorsiflexion[7] on the right was sixty degrees, and fifty-five degrees on the left. (*Id.*). Dr. Montalvo diagnosed Ortiz with ten afflictions, none of which related specifically to Ortiz's wrists or hands, and indicated that Ortiz's prognosis was "stable." (Tr. 432-33). Based on her examination, Dr. Montalvo opined that Ortiz had "moderate limitations for bending, lifting, carrying, reaching, walking, and standing." (Tr. 433). The ALJ afforded this opinion "great weight" because Dr. Montalvo was able to physically examine Ortiz, and her opinion of "moderate limitations," especially with regard to Ortiz's reaching capabilities, was consistent with the ALJ's RFC findings. (Tr. 75).

In addition, independent medical examiner Dr. Hausmann was clearly aware of Ortiz's left wrist issues, yet similarly did not impose any limitations regarding Ortiz's fingering or handling with her left upper extremity. The record reflects that Dr. Hausmann evaluated Ortiz on three separate occasions: February 2012 (Tr. 368-71), October 2012 (Tr. 365-67), and May 2013 (Tr. 528-29). At the February 2012 evaluation, Dr. Hausmann noted that Ortiz brought a report with her from Dr. Gregg Nicandri, Ortiz's orthopedist, which indicated that Ortiz "had a diagnosis of left shoulder adhesive capsulitis and left de Quervain's tendinitis." (Tr. 368). Ortiz presented with complaints of "sharp pain in the upper part of her left shoulder and also pain in the wrist and difficulty gripping." (Tr. 369). Upon examination, Ortiz's left wrist "showed

---

[7] Dorsiflexion is an "upward movement (extension) of . . . the hand or fingers." STEDMANS MEDICAL DICTIONARY 264780, Westlaw (database updated November 2014).

8

negative Finkelstein's test[.]" (Tr. 370).[8] Dr. Hausmann diagnosed Ortiz with "acute left shoulder strain, causally related," and "left wrist de Quervain's tenosynovitis of unknown etiology, resolved," and noted that Ortiz had "no clinical evidence of de Quervain's at this point." (Tr. 370-71).

In October 2012, Dr. Hausmann noted that while Ortiz presented with complaints of left wrist pain for which she wore a brace, she showed no signs of swelling or deformity in the left wrist, and a Finkelstein test was again negative. (Tr. 366). Ortiz's grip, pinch, and intrinsic strength was grade four out of five. (*Id.*). Based on his evaluation of Ortiz, Dr. Hausmann's only diagnosis was "acute left shoulder strain with physician diagnosis of adhesive capsulitis"— he gave no diagnosis regarding Ortiz's left wrist or hand. (Tr. 366-67). Dr. Hausmann opined that Ortiz's "disability at this time related to the shoulder would be at the mild-to-moderate level. . . . Appropriate restrictions for her would be to avoid overhead lifting with her left arm. Other than that, I have no specific restrictions." (Tr. 367). In addition, although Ortiz also presented with wrist pain in May 2013, it is not clear if Dr. Hausmann assessed any functional limitations regarding Ortiz's wrist use at that time. (Tr. 528-529).

Moreover, the ALJ thoroughly reviewed and discussed Ortiz's treatment records from 2014 relating to her left de Quervain tenosynovitis and left ring finger trigger[9]. (Tr. 70). The ALJ noted, "in July 2014, the claimant was found once again to have a 75% level of disability with no lifting over five pounds. Despite that, Dr. Nicandri stated that she was able to perform

---

[8] Finkelstein test is a test to detect de Quervain tenosynovitis "in which the thumb is flexed into the palm and is covered by the remaining four digits; the wrist is then bent toward the ulna; positive result of test produces pain and crepitus along the path of the involved tendon." STEDMANS MEDICAL DICTIONARY 905070, Westlaw (database updated November 2014).

[9] Trigger finger is "a condition in which the movement of the finger is arrested for a moment in flexion or extension and then continues with a jerk[.]" STEDMANS MEDICAL DICTIONARY 334400, Westlaw (database updated November 2014).

9

sedentary work with limited freedom to change positions." (*Id.*) (citing Tr. 1124). The ALJ later accorded Dr. Nicandri's opinion "some weight" with "greater weight being given to his findings regarding the claimant's functional limitations." (Tr. 76). The Commissioner, too, relies on this functional assessment from Dr. Nicandri to argue that the ALJ's RFC finding is supported by substantial evidence. (Dkt. # 17 at 6) (citing Tr. 1124). Yet it seems that opinion is actually from Dr. Gonzalez. (Tr. 1124).[10] Still, both the ALJ in his opinion and the Commissioner's brief accurately cite Dr. Gonzalez's findings that, because of Ortiz's "left de Quervain tenosynovitis, resolved," and "left ring finger trigger," Ortiz's level of disability was "75%-marked," she should not lift over 5 pounds" and was "able to perform sedentary work, with limited freedom to change positions, etc." (*Id.*).

Finally, the ALJ acknowledged that Ortiz had surgery on her left wrist and ring finger in December 2014 because of ongoing issues with her left wrist and hand. (Tr. 73). He further recognized that the fact of surgery "demonstrate[d] significant limitations involving the left upper extremity," (Tr. 75), and took into consideration the most recent physical RFC completed post-surgery by NPC Bowen, albeit affording that assessment "little weight," (Tr. 74).[11] In the ALJ's March 2015 opinion, he pointed out that "[i]t is difficult to ascertain the claimant's functioning of the left hand since surgery took place only very recently in December 2014," yet noted that "there is no evidence that [Ortiz's] condition worsened since the surgery," (Tr. 75), a finding that Ortiz does not explicitly dispute in her papers. This Court finds it significant that Ortiz does not make an argument that the ALJ failed to develop the record regarding her left

---

[10] Although the ALJ only attributes Ortiz's 2014 treatment notes for her left de Quervain tenosynovitis and left ring finger trigger to Dr. Nicandri and NPC Bowen, based on this Court's review, it is apparent that Dr. Ronald Gonzalez, D.O., an orthopedic surgeon, also evaluated Ortiz in 2014 related to the same injuries. (*See, e.g.*, Tr. 626-643, 1124-1127).

[11] NPC Bowen's opinion is discussed in more detail below. (*See, infra*, § D.3).

hand and wrist limitations, or that the ALJ overlooked specific medical evidence of record in arriving at his RFC. In addition, neither Ortiz nor her attorney highlighted any further limitations regarding her left hand and wrist at the disability hearing in February 2015. Finally, Ortiz does not point to any evidence submitted subsequent to the ALJ's decision that contradicts the ALJ's finding that "there is no evidence that [Ortiz's] condition worsened since the surgery." (Tr. 75).

Therefore, this Court finds that the ALJ's RFC finding that Ortiz is limited to "occasional" use of her left upper extremity for fingering and handling is supported by substantial evidence, and neither the product of the ALJ's lay opinion nor stale evidence. Based on this Court's review of the record, sufficient information existed for the ALJ to make his disability determination, and the ALJ properly weighed all of the available evidence "to make an RFC finding that [is] consistent with the record as a whole." *Matta*, 508 Fed. Appx. at 56. Thus, remand is not warranted on this basis.

### 2. Whether the ALJ's RFC Finding Improperly Failed to Incorporate Certain Limitations from Dr. Arreaza's Medical Opinion.

Ortiz also argues that the ALJ failed to incorporate all of the limitations assessed by Dr. Arreaza into his RFC finding, despite giving that opinion "great weight." (Dkt. # 11-1 at 26-28). Specifically, Dr. Arreaza opined that Ortiz had certain environmental restrictions due to her asthma. Ortiz was to "avoid all exposure" to "extreme cold, wetness, humidity, and hazards (machinery, heights, etc.)" and avoid "even moderate exposure" to "extreme heat, fumes, odors, dusts, gases, poor ventilation, etc." (Tr. 703). Dr. Arreaza also opined that Ortiz's asthma would cause her to be absent from work "about twice a month" on average. (*Id.*). Ortiz claims that the ALJ erred by not including these limitations in his RFC finding and by failing to explain his reasons "for seemingly rejecting these limitations." (Dkt. # 11-1 at 27).

11

The Commissioner argues that the ALJ's failure to include the assessed environmental limitations in his RFC finding was harmless error. (Dkt. # 17 at 7-8). The Court agrees. "Where application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency reconsideration." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (alterations omitted) (quoting *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). Here, based on the VE's testimony, the ALJ concluded that Ortiz could perform two jobs: calculating machine operator (DOT 216.482-022); and information clerk (DOT 237.367-022). (Tr. 77). According to the Dictionary of Occupational Titles, neither of those jobs would expose Ortiz to the types of environmental limitations imposed by Dr. Arreaza. *See* DICOT 216.482-022 Calculating-Machine Operator, 1991 WL 671935; *see also* DICOT 237.367-022 Information Clerk, 1991 WL 672188.

Therefore, the "environmental limitations imposed by [Dr. Arreaza] would not have changed the ALJ's step five determination." *Kenyon v. Comm'r of Soc. Sec.*, No. 16-cv-0260, 2017 WL 2345692, *5 (N.D.N.Y. May 30, 2017) ("any error to include environmental limitations in the RFC determination would be harmless error because the positions identified by the vocational expert do not require exposure to atmospheric conditions such as dust, fumes, and gases"); *Gishey v. Colvin*, No. 13-cv-1036, 2015 WL 1505674, *11 (N.D.N.Y. Mar. 31, 2015) (collecting cases) ("Even if the ALJ had considered and adopted the environmental limitations contemplated by [plaintiff's doctors], it would not have altered his analysis at step five and his conclusion, based solely on the Grids, that plaintiff could perform other, sedentary work. Hence, any error arising from the ALJ's failure to explicitly address these environmental limitations in assessing plaintiff's RFC was harmless."); *Rafferty v. Colvin*, No. 12-cv-1554, 2014 WL 1875339, *11 (N.D.N.Y. May 9, 2014) ("plaintiff's need to avoid concentrated exposure to

respiratory irritants has only a minimal impact on her ability to perform sedentary work"). As a result, remand is not required on this basis.

Nor is remand required because of the ALJ's failure to incorporate Dr. Arreaza's opinion that Ortiz would miss on average two days of work a month due to asthma into his RFC finding. This, too, is harmless error, especially in light of the VE's testimony. At the disability hearing, Ortiz's attorney asked the VE whether someone who was limited to occasional use of the non-dominant upper extremity, like Ortiz, could sustain work if he or she needed "unscheduled days off on average twice a month." (Tr. 112). The vocational expert responded that "[m]ore than two days per month would be no work. Up to two days would be fine." (*Id.*). In the Court's view, this question sufficiently established that Dr. Arreaza's opinion regarding Ortiz's anticipated absences would not affect the ALJ's disability determination on remand. Therefore, the ALJ's failure to incorporate this limitation into his RFC finding was harmless error.

### 3. Whether the ALJ Improperly Evaluated the Opinion of NPC Bowen.

Finally, Ortiz argues that the ALJ failed to properly evaluate NPC Bowen's treating "other source" opinion and explain the weight given to that opinion. (Dkt. # 11-1 at 28-30). According to Ortiz, this failure was "especially harmful" because NPC Bowen's opinion "directly conflicted with the step four finding in that, among other ways, [NPC Bowen] opined [Ortiz] could not lift more than 5 pounds and would need the ability to change positions." (*Id.* at 30). The Commissioner responds that the ALJ "in fact considered NPC Bowen's opinion, though he misattributed it to Dr. Gonzalez." (Dkt. # 17 at 8). The Commissioner further contends that the ALJ rightly afforded that opinion "little weight" both because NPC Bowen's opinion was "unquestionably based on a short-term assessment of [Ortiz] immediately after her

hand surgery," and "NPC Bowen was not an acceptable medical source and her opinion was not entitled to deference." (*Id.*).

Ortiz replies that the Commissioner's misattribution argument is "based on mere speculation." (Dkt. # 18 at 5). After a careful review of the record, though, this Court agrees with the Commissioner that the ALJ misattributed that opinion to Dr. Gonzalez. This Court has not found, and neither party references, a January 2015 physical RFC questionnaire completed by Dr. Gonzalez. Yet there is a January 7, 2015, "physical residual functional capacity questionnaire," which NPC Bowen completed and addressed to Dr. Gonzalez. (Tr. 1131-1135). Upon review, it is evident that the substance of NPC Bowen's physical RFC opinion aligns with the ALJ's discussion of the opinion he attributed to Dr. Gonzalez, to which he afforded "little weight." (Tr. 74). This suggests that the ALJ's evaluation of that opinion would not have changed had he credited the opinion to NPC Bowen. *See Acevedo v. Colvin*, 20 F. Supp. 3d 377, 388 n.8 (W.D.N.Y. 2014) ("Because the ALJ also discredited the 'Dr. Stuart' opinion, the ALJ's error in misidentifying Dr. Lopez is harmless, as the ALJ's decision would not change with the correct identification."); *Johnson v. Colvin*, No. 13-cv-1455, 2014 WL 3809106, *5 (D. Colo. Aug. 1, 2014) ("The ALJ accurately described Dr. Kutz's medical opinions, and he considered these opinions as he is required to consider any medical source. Under these circumstances, the fact that the ALJ used the wrong name to refer to Dr. Kutz does not require remand."); *Helton v. Astrue*, No. 09-6144-cv, 2011 WL 4436535, *5 (W.D. Mo. Sept. 23, 2011) ("Initially, it should be noted that it appears that the ALJ inadvertently referred to Dr. Bein's opinion, rather than Dr. Cianciolo's . . . It is clear from a careful review of the record that the ALJ inadvertently referred to the wrong doctor by name, but referred to the right exhibit, 10F. Given [the ALJ's discussion of the opinion], it is clear he was referring to the opinion of Dr. Cianciolo.").

Moreover, at the end of the ALJ's discussion of the January 2015 physical RFC questionnaire, he cited "Exhibit 30F." (Tr. 74). That citation refers to the "Physical RFC Assessment" of NPC Bowen completed on January 7, 2015. (Tr. 84). For these reasons, this Court is convinced that the ALJ mistakenly attributed the January 2015 physical RFC questionnaire to Dr. Gonzalez as opposed to NPC Bowen, and will not remand based on this error. *See, e.g.*, *Slater v. Berryhill*, No. 16-cv-30147, 2017 WL 4181349, *8 (D. Mass. Sept. 21, 2017) (rejecting plaintiff's argument that the ALJ's misattribution of a medical opinion "represent[ed] an error of law"; "[g]iven the ALJ's unequivocal reference to exhibit 34F, which contains Dr. Cooper's statement . . . it is clear that the ALJ is referencing the record of [p]laintiff's February 27, 2015 visit with Dr. Cooper. As the government notes, there is no evidence that the misidentification was anything but a harmless scrivener's error"); *Johnson v. Colvin*, No. 13-cv-3745, 2015 WL 6738900, *15 n.8 (E.D.N.Y. Nov. 4, 2015) ("Plaintiff argues relatedly that the ALJ mistakenly referred to Dr. Hahn as Dr. Slowe. . . . This probable typo had no substantive impact on the ALJ's analysis, and certainly does not call for a remand."), *aff'd*, 669 Fed. Appx. 580 (2d Cir. 2016) (summary order).

The Court, therefore, also disagrees with Ortiz that the ALJ "failed to explain what weight, if any, he afforded [NPC Bowen's] opinion," (Dkt. # 11-1 at 28), and that the ALJ "outright reject[ed]" her opinion, (Dkt. # 18 at 6). As stated, the ALJ analyzed NPC Bowen's RFC questionnaire and accurately described NPC Bowen's post-surgical assessment of Ortiz. The ALJ gave "little weight" to NPC Bowen's opinion because "it was completed one month after [Ortiz] underwent surgery," and, in the ALJ's view, was "not an accurate indicator of [Ortiz's] functioning since a true measure of [Ortiz's] functional capabilities would take place after she fully recovered from the surgery." (Tr. 74).

This was a reasonable reading of NPC Bowen's opinion. Although NPC Bowen opined that Ortiz could not sustain full-time employment at any exertional level (Tr. 1133), that Ortiz could never lift and carry less than ten pounds (Tr. 1134), and had significant limitations with reaching, handling, and fingering (Tr. 1135), her opinion was clearly limited to the period during which Ortiz was recovering from surgery. NPC Bowen specified that Ortiz's impairments had not lasted and were not expected to last at least twelve months, could be treated with physical therapy, and clarified that Ortiz was "temporarily totally disabled *at this time*." (Tr. 1132-1135) (emphasis supplied). Indeed, tellingly, Ortiz's prehearing memorandum to the ALJ stated that NPC Bowen's opinion "was provided in the context of recovery from surgery *only*." (Tr. 314) (emphasis supplied). "An assessment of functionality conducted while a claimant is recovering from surgery does not accurately reflect the claimant's long-term limitations." *Thomas v. Astrue*, No. 09-cv-71, 2010 WL 546699, *6 (E.D. Tenn. Feb. 10, 2010). Therefore, the ALJ was entitled to afford Bowen's opinion "little weight" in determining Ortiz's RFC. *See, e.g.*, *Datzko v. Comm'r of Soc. Sec.*, No. 13-13559, 2015 WL 730089, *3 (E.D. Mich. Feb. 19, 2015) ("While Dr. Middleton did indicate that [p]laintiff should remain off work following his April 2009 surgery, the ALJ reasonably found that this recommendation was entitled to little weight because it appeared to be a temporary restriction relating to claimant['s] surgical recovery.").

## CONCLUSION

For the foregoing reasons, Ortiz's motion to vacate the ALJ's decision and remand the matter (Dkt. # 11) is **DENIED**, and the Commissioner's cross motion for judgment on the

pleadings (Dkt. # 17) is **GRANTED**. Ortiz's Complaint (Dkt. # 1) is **DISMISSED with prejudice**. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
April 13, 2018.